IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

OCEAN CITY EXPRESS CO., INC.,

                    Plaintiff,

        v.

ATLAS VAN LINES, INC.,

                    Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 13-1467 (JBS/KMW)

**OPINION**

APPEARANCES:

Jeffrey H. Sutherland, Esq.
JEFFREY H. SUTHERLAND, PC
Linwood Commons
2106 New Road, Suite E-5
Linwood, N.J. 08221
        Attorney for Plaintiff

Gary Francis Seitz, Esq.
RAWLE & HENDERSON, LLP
401 Route 73 North
40 Lake Center Executive Park, Suite 200
Marlton, N.J. 08053
        Attorney for Defendant

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

        The matter comes before the Court on Defendant Atlantic Van

Lines, Inc.'s (hereinafter, "Defendant") motion to dismiss

Plaintiff's Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  [Docket Item 20.]  Plaintiff Ocean City

Express Co., Inc.'s (hereinafter, "Plaintiff") two-count Amended

Complaint asserts claims for violation of the New Jersey

Franchise Protection Act (hereinafter, the "NJFPA") and for breach of the implied duty of good faith and fair dealing. Defendant generally alleges that Plaintiff fails to state a viable claim under the NJFPA and, alternatively, that federal law preempts the NJFPA as applied to the parties' relationship. Defendant also challenges Plaintiff's Amended Complaint to the extent it reasserts a good faith and fair dealing claim.

The Court has previously addressed, on two separate occasions, the viability of Plaintiff's claims. In the first such ruling, the Court granted Defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and dismissed as moot Defendant's motion for improper venue under Federal Rule of Civil Procedure 12(b)(3). See Ocean City Express Co., Inc. v. Atlas Van Lines, Inc., No. 13-1467, 2013 WL 3873235, at *5 (D.N.J. July 25, 2013). In the second, the Court denied Plaintiff's motion to amend pursuant to Federal Rule of Civil Procedure 15(a) and dismissed with prejudice Plaintiff's good faith and fair dealing claim. [1] See

---

[1] Consequently, the Court need not engage in any protracted inquiry concerning Plaintiff's reassertion of a good faith and fair dealing claim. (See First Am. Compl. [Docket Item 18], 4.) The Court's prior ruling unequivocally dismissed Plaintiff's implied good faith and fair dealing claim with prejudice. See Ocean City, 2014 WL 654589, at *7. In reasserting the good faith and fair dealing claim, Plaintiff does not address why, given the Court's prior ruling, this claim remains viable. Nor does Plaintiff proffer any grounds for relief from the Court's prior Order pursuant to Federal Rule of Civil Procedure 60(b).

2

<u>Ocean City Express Co., Inc. v. Atlas Van Lines, Inc.</u>, No. 13-1467, 2014 WL 654589, at *7 (D.N.J. Feb. 19, 2014).  With respect to Plaintiff's NJFPA claim, the Court concluded that Plaintiff pleaded facts sufficient to satisfy the license, community of interest, gross sales, and sales percentage requirements of the NJFPA, but failed to plead the requisite facts with respect to the NJFPA's place of business requirement.  <u>Id.</u> at *7.  The Court accordingly dismissed without prejudice Plaintiff's NJFPA claim.   <u>Id.</u>

     The principal issues now before the Court are whether Plaintiff, in its third attempt, states a plausible NJFPA claim and, relatedly, whether federal law preempts application of the NJFPA in this instance.  For the reasons explained below, the Court will deny in part and dismiss as moot in part Defendant's motion to dismiss.

**II.  BACKGROUND**

  **A. Factual Background**

     The facts set forth below are those alleged in Plaintiff's Amended Complaint, which the Court accepts as true for the purposes of the pending motion.  Defendant Atlas Van Lines, Inc., an entity incorporated in Indiana, and with its principal place of business in Evansville, Indiana, engages in interstate

---

Rather, Plaintiff recapitulates <u>identically</u> the allegations previously dismissed by the Court.  (<u>Compare</u> First Am. Compl. [Docket Item 13], <u>with</u> First Am. Compl. [Docket Item 18].)

commerce as a motor carrier registered with the Department of Transportation. (First Am. Compl. [Docket Item 18], ¶ 3 & Ex. A.)

On or about March 31, 2006, Defendant entered into an agency agreement with Plaintiff Ocean City Express Co., Inc., a corporation formed in New Jersey and with a principal place of business in Pleasantville, New Jersey. (First Am. Compl. at ¶ 4.) In the agreement, Plaintiff generally agreed to represent and act on Defendant's behalf in connection with Defendant's "business as an interstate common and contract motor carrier and property broker." (Id., Ex. A.) Plaintiff alleges that compliance with the agency agreement required it to incur "substantial expense" in order to conform its markings, signage, and printed materials to Defendant's requirements. (First Am. Compl. at ¶ 5.) Despite the initial expense, Plaintiff asserts that its gross sales arising out of the agency agreement amounted to more than $35,000 within the twelve months preceding this action, that "gross sales for 2010 exceeded $2.7 million[,]" and that "gross sales for 2011 exceeded $1.8 million." (Id. at ¶ 7.) Plaintiff further alleges that the revenue derived from the agency agreement "comprised between 85% and 90% of Plaintiff's total revenue." (Id. at ¶ 8.)

Plaintiff also asserts that the NJFPA governs the "business relationship" between the parties, including "Defendant's

performance" pursuant to the agency agreement, with Plaintiff acting as "'Franchisee'" and Defendant assuming the role of "'Franchisor'" under the NJFPA. (Id. at ¶ 6.) Plaintiff alleges, however, that Defendant violated the NJFPA by terminating the agency relationship on December 17, 2010, without "'good cause'" under the NJFPA for such termination. (Id. at ¶ 9-10.) Plaintiff accordingly seeks to recover the monetary damages it incurred as a result of Defendant's purportedly improper termination. (Id. at ¶¶ 11-14.)

## B. Procedural History

Defendant removed this action from the Superior Court of New Jersey on March 11, 2013. (See Notice of Removal [Docket Item 1].)

On March 18, 2013, Defendant filed its first motion to dismiss Plaintiff's complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and/or for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). [Docket Item 3.] The Court's July 25, 2013 Opinion found that Plaintiff "failed to plead sufficient facts" to demonstrate that the parties' business relationship "qualified as a franchise relationship under the NJFPA." Ocean City Express Co., Inc., 2013 WL 3873235, at *5. The Court found, in particular, that Plaintiff's pleading failed to allege the gross sales stemming from the parties' relationship and also failed to

5

allege the percentage of Plaintiff's sales derived from the agency agreement.  Id. at *3.  The Court therefore dismissed Plaintiff's NJFPA claim without prejudice, and without reaching the issue of whether federal law preempts the NJFPA nor whether Plaintiff alleged facts in support of the NJFPA's other requirements.  Id. at *5.

On August 7, 2013, Plaintiff filed a motion to amend pursuant to Federal Rule of Civil Procedure 15(a).  [Docket Item 12.]  The Court's February 19, 2014 Opinion found that Plaintiff pleaded "facts sufficient to satisfy the license, community of interest, gross sales, and sales percentage requirements of an NJFPA franchise[,]" but failed "to plead that its principal office" constituted a qualifying place of business under the NJFPA.  Ocean City Express Co., Inc., 2014 WL 654589, at *7. Consequently, without reaching the issue of whether federal law preempts the NJFPA, the Court again dismissed Plaintiff's NJFPA claim without prejudice, and with the right to file an amended pleading without "seeking leave of court" to the extent such filing comported with counsel's obligations under Federal Rule of Civil Procedure 11.  Id.

Plaintiff filed its Amended Complaint on February 28, 2014, in which Plaintiff modified its pleading in only two respects. (Compare First Am. Compl. [Docket Item 13], with First Am. Compl. [Docket Item 18].)  Plaintiff specifically defines

6

Plaintiff's "principal office" location as its "'Place of

Business[,]'" and further states that

> Plaintiff's Place of Business included an office where
> all sales personnel were located and made and/or
> received calls or walk-in customers seeking moving/re-
> location services, displayed the Atlas Van Lines name
> and logo, displayed and distributed Atlas Van Lines
> brochures/sales materials and agreements of service,
> was listed as its retail address in any advertisements
> directed at its customers or potential customers and
> generally conducted all day to day operations of
> Plaintiff's business and marketing operations.
> Plaintiff's Place of Business also was its only
> operation hub for all of its moving vehicles (which
> were labeled as Atlas Van Lines vehicles) and served
> as a warehouse for its customers goods that were
> temporarily stored as part of the moving or re-
> location services provided by Plaintiff.

(Id. at ¶ 2.)  The pending motion to dismiss followed

thereafter. [Docket Item 20.]

### C. Parties' Arguments

Defendant generally argues that Plaintiff's pleading fails

to satisfy the "qualifying place of business" requirement under

the NJFPA and, therefore, fails to state a cognizable NJFPA

claim.  (Def.'s Br. [Docket Item 20-1], 2-3.)  Defendant

specifically asserts that the NJFPA requires Plaintiff to allege

that "gross sales of products or services between the franchisor

and franchisee" exceeded $35,000 "for the 12 months preceding"

the initiation of the litigation.  (Id. at 3 (emphases

omitted).)  Defendant argues that Plaintiff instead alleges that

its "gross sales stemming from the Agency Agreement 'exceed[ed]

$35,000 within the 12 months preceding the law suit'" and that "revenue from Defendant 'comprised between 85% and 90% of Plaintiff's total revenue[.]'" (Id. (citing First Am. Compl. [Docket Item 18], ¶¶ 7-8).) Defendant asserts, however, that these allegations fail to satisfy the NJFPA's requirements, because Plaintiff has not alleged "gross sales" between Plaintiff and Defendant during the "one year period" prior to this action, nor has Plaintiff "plead the volume of its gross sales" between Plaintiff and Defendant "during the 12 months preceding the termination of the agency agreement[.]"[2] (Reply Br. of Atlas Van Lines, Inc. in Supp. of Def.'s Mot. to Dismiss

---

[2] To the extent Defendant reargues its position that Plaintiff's Amended Complaint fails to plead facts sufficient to satisfy the gross sales and sales percentage requirements of the NJFPA, (see Def.'s Br. [Docket Item 20-1], 3-4; Def.'s Reply [Docket Item 25], 3-4), the Court rejects these arguments for the reasons set forth in the Court's February 14, 2014 Opinion. See Ocean City Express Co., Inc., 2014 WL 654589, at *6-*7. Indeed, the Court expressly concluded, with respect to the same allegations presented in Plaintiff's Amended Complaint, that Plaintiff's pleading satisfied these NJFPA requirements. Id. Moreover, the Court finds Defendant's reliance on DeLuca v. Allstate Ins. Co., Nos. BER-C-185-11, BER-C-291-11, BER-C-299-11, 2011 N.J. Super. Unpub. LEXIS 3140 (N.J. Super. Ct. Ch. Div. Dec. 28, 2011) inapposite. The state court in DeLuca found the NJFPA inapplicable to plaintiff's claims because New Jersey statutory authority prohibited plaintiff, an insurance agent, from directly selling the insurer defendant's products. Id. at *67-*68. Rather, the DeLuca court found that insurance agents, like the DeLuca plaintiff, only solicit customers and offer "the products and services of the insurer for sale," but do not sell either. Id. at *68. The agency agreement in this instance, however, clearly requires Plaintiff to "solicit[,]" "book[,]" and "haul shipments" under Defendant's authority. (Ex. A [Docket Item 18].)

for Failure to State a Claim (hereinafter, "Def.'s Reply") [Docket Item 25], 4.)

Defendant also argues that Plaintiff fails to plead the location from which its sales derived, nor in accordance with "the statutory exception," has Plaintiff alleged that its principal place of business constitutes "a locus of sales activity involving interaction between Plaintiffs' salespeople and actual or potential customers of" Defendant's services, rather than "a mere office or warehouse." (Def.'s Reply [Docket Item 25], 8-9; see also Def.'s Br. [Docket Item 20-1], 4.) Alternatively, and in addition, Defendant asserts that federal law, namely, the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c)(1) (hereinafter, the "FAAA Act"), preempts the NJFPA "as applied" to the parties' relationship, because the agency agreement relates to the "'transportation of property' or the 'service' of a motor carrier[.]"  (Def.'s Br. [Docket Item 20-1], 7.)

Plaintiff generally counters that the Amended Complaint sets forth factual allegations sufficient to satisfy the NJFPA's "'place of business'" requirement, because Plaintiff "provides" moving services directly to the consumer, and because Plaintiff "incurred substantial expense in de-branding its trucks and facilities" in the wake of Defendant's termination of the agency

9

agreement.[3] (Pl.'s Br. in Opp'n to Mot. to Dismiss Pursuant to Rule 12(b)(6) [Docket Item 24], 5.)  Plaintiff also asserts that federal law does not preempt Plaintiff's NJFPA claim, and states that Defendant "unsuccessfully raised the same preemption defense" in connection with suits "by other similarly situated" franchisees. (Id. at 7.)

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the court must generally accept as true the factual allegations in the complaint, and construe all "reasonable inferences" in the light most favorable to the plaintiff.  Revell v. Port Auth. Of N.Y., N.J., 598 F.3d 128, 134 (3d Cir. 2010).  However, "[a] pleading that offers labels and conclusions or a formulaic recitation of

---

[3] In addition to the "Statement of Facts" set forth in Plaintiff's opposition brief, Plaintiff has also submitted an "Opposition Statement[,]" which endeavors to respond, by numbered paragraphs, to the averments set forth in Defendant's motion. (Def.'s Br. [Docket Item 24], 2-3; Pl.'s Opp'n Statement to Mot. to Dismiss Pursuant to Rule 12(b)(6) [Docket Item 23; Def.'s Mot. to Dismiss for Failure to State a Claim Pursuant to Fed. R. of Civ. P. 12(b)(6) [Docket Item 20].)  It is axiomatic, as noted by Defendant, that the Court may not, in resolving a motion to dismiss, consider "matters extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Rather, the Court may only consider a "'document integral to or explicitly relied upon in the complaint,'" or an "'undisputedly authentic document'" if such document forms the predicate for the complaint. In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999) (citations and emphases omitted). The Court shall therefore not consider the parties' submissions to the extent such submissions make factual assertions extraneous to the pleadings.

the elements of a cause of action" fails to suffice.  Ashcroft
v. Iqbal, 556 U.S. 662, 678 (2009). Rather, the plaintiff's
factual allegations must be facially sufficient to demonstrate a
"plausible" right to relief, by pleading factual content
sufficient for the Court "to draw the reasonable inference that
the defendant is liable for the misconduct alleged." Iqbal, 556
U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,
570 (2007); see also Umland v. PLANCO Fin. Serv., Inc., 542
F.3d 59, 64 (3d Cir. 2008).  In evaluating whether a complaint
meets this pleading standard, the Court strips away conclusory
statements and reviews instead the "well-pled factual
allegations, assume[s] their veracity, and then determine[s]
whether" the allegations demonstrate a plausible "entitlement to
relief." Iqbal, 556 U.S. at 678 (internal quotation marks
omitted).


IV.  DISCUSSION

  A. Plaintiff's Pleading Satisfies the NJFPA's Place of
     Business Requirement

     Having previously addressed the sufficiency of Plaintiff's
pleading, the Court need only address in the context of the
pending motion whether Plaintiff's Amended Complaint cures the
prior pleading deficiencies regarding the NJFPA's place of
business requirement. Consequently, the Court notes that, in
order to satisfy the "place of business" requirement under the

NJFPA, the contractual agreement must "'contemplate or require' the franchisee to establish or maintain a place of business within the state of New Jersey." Ocean City Express Co., Inc., 2014 WL 654589, at *5 (quoting N.J.S.A. § 56:10-4(a)(1)).  A qualifying "place of business" requires, in turn, "[a] fixed geographical location at which the franchisee displays for sale and sells the franchisor's goods or offers for sale and sells the franchisor's services[,]" rather than merely "an office, a warehouse, a place of storage, a residence or a vehicle." N.J.S.A. § 56:10-3(f) (emphases added). In other words, the NJFPA requires an actual sales location in New Jersey at which a "substantial level" of customer marketing and "sales-related [customer] interplay" occurs, not solely a center of distribution.  Fischer Thompson Beverages, Inc. v. Energy Brands Inc., No. 07-4585, 2007 WL 3349746, at *3 (D.N.J. November 9, 2007) (citing Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc., 63 F.3d 262, 274-275 (3d Cir. 1995) (finding that a showroom/marketing center constituted a qualifying place of business because the franchisee "regularly used th[e] facility for activities that were an integral part of the sales process")); see also Liberty Sales Assocs., Inc. v. Dow Corning Corp., 816 F. Supp. 1004, 1009 (D.N.J. 1993) (finding that a residential office/warehouse did not constitute a qualifying place of business, in light of the fact that sales

12

efforts at that location were limited to telephoning potential
buyers).  In order to survive dismissal, Plaintiff must
therefore allege that selling constitutes a "major activity" on
its premises, "involving the interplay of goods on display, the
physical presence of the customer[,]" in addition to actual
efforts to sell product(s) to the customer.  Liberty Sales
Assoc., Inc., 816 F. Supp. at 1009.

Plaintiff' Amended Complaint alleges in this instance that
Plaintiff's "Place of Business" constitutes the hub of
Plaintiff's "day to day" business and marketing operations,
(First Am. Compl. [Docket Item 18], ¶ 2), in addition to:

1. The location of "all sale personnel" and the site at
   which such personnel "made and/or received calls" or
   walk-in customers seeking "moving/relocation" services
   (id.);
2. The location identified "as its retail address in any
   advertisements directed at its customers or potential
   customers" (id.);
3. The location at which Plaintiff "displayed and
   distributed" Defendant's signage, "brochures/sales
   materials and agreements of service," (id.); and
4. Plaintiff's "warehouse" for the "temporar[y]" storage of
   "customers['] goods" retained in connection with
   Plaintiff's "moving or relocation services[.]"

(Id.) These allegations suffice to demonstrate that Plaintiff's
place of business constitutes a sales location of sufficient
substantiality under the NJFPA.  Indeed, the allegations,
accepted as true, clearly allege that Plaintiff regularly used
its business location as the core of Plaintiff's sales
activities, and housed all of its sales force at this location

13

precisely for such purpose.  The allegations further allege that the activities at this location included direct telephonic or in-person customer interaction and visual displays and/or advertisements to such customers. Consequently, though this location also served as a "warehouse[,]" an office for day-to-day operations, and a temporary "place of storage" for customers' goods, it is readily apparent that the allegations sufficiently allege that Plaintiff's place of business constitutes a qualifying place of business under the NJFPA. N.J.S.A. § 56:10-3(f).

Defendant argues, however, that Plaintiff nebulously refers to the existence of "'walk in customers[,]'" but fails to allege that Plaintiff actually consummated "sales to such customers – or any customers," nor that such sales amounted to "a substantial part of its business[.]"  (Def.'s Reply [Docket Item 25], 9.) The Court finds Defendant's arguments unconvincing, particularly in light of the fact that Plaintiff's pleading unequivocally states that Plaintiff's "sale personnel" corresponded with customers by telephone and received "walk-in customers" at Plaintiff's place of business.  (First Am. Compl. [Docket Item 18], ¶ 2.) Rather, the Court concludes that Plaintiff's allegations, accepted as true, state a valid NJFPA claim.  See N.J.S.A. § 56:10-3(f) (defining a "'place of business'" under the NJFPA as a location at which "the

franchisee <u>displays for sale and sells</u> the franchisor's goods or

offers for sale and sells the franchisor's services, <u>or</u> an

office or a warehouse from which <u>franchisee personnel visit or

call upon customers</u>") (emphasis added).

**B. Federal Law Does Not Preempt Application of the NJFPA in this Action**

Having concluded that Plaintiff states a valid NJFPA claim,

the Court next considers whether Section 14501(c)(1) of the FAAA

Act preempts the NJFPA. The FAAA Act, enacted in 1994 as part of

a Congressional effort "to pre-empt state trucking

regulation[,]" <u>Rowe v. N.H. Motor Transp. Ass'n</u>, 552 U.S. 364,

368 (2008), generally preempts state and local regulations

"related to a price, route, or service of any motor carrier ...

with respect to the transportation of property."  49 U.S.C. §

14501(c)(1).  "[B]orrowed" from the preemption language of the

Airline Deregulation Act of 1978 (hereinafter, the "ADA"),

courts have interpreted the breadth of preemption under the FAAA

Act consistently with the ADA.  <u>N.H. Motor Transp. Ass'n</u>, 552

U.S. at 368.  In <u>Morales v. Trans Worlds Airlines, Incorporated</u>,

504 U.S. 374 (1992), the Supreme Court broadly interpreted the

language of the ADA as preempting "'[s]tate enforcement actions

<u>having a connection with, or reference to</u>' carrier 'rates,

routes, or services[,]'" even if the state law only

"'indirect[ly]'" affects such rates, routes, or services. <u>Rowe</u>,

552 U.S. at 370 (quoting Morales, 504 U.S. at 384, 386)
(emphasis in original).  In Rowe v. New Hampshire Motor
Transport Association, the Supreme Court expressly concluded
that this liberal interpretation of the ADA applies, with equal
effect, to the "related to" language of 49 U.S.C. § 14501(c)(1).
552 U.S. at 370-71.

Section 14501(c)(1) principally aims to deregulate certain
aspects of "intrastate transportation" that: (1) impose "an
unreasonable burden" on interstate commerce; (2) impede "the
free flow of trade, traffic, and transportation" of interstate
commerce; and (3) result in "unreasonable cost" to consumers.
Federal Aviation Administration Authorization Act of 1994, Pub.
L. 103-105, § 601(a), 108 Stat. 1605 (1994).  Section
14501(c)(1) does not, however, "pre-empt state laws that affect
rates, routes, or services in 'too tenuous, remote, or
peripheral a manner.'"  Rowe, 552 U.S. at 375 (quoting Morales,
504 U.S. at 390) (emphasis in original).  Rather, Section
14501(c)(1) only preempts state laws that impose a "'significant
impact' on carrier rates, routes, or services," or that
significantly hinder the FAAA Act's ability to achieve its
"deregulatory and pre-emption-related objectives," Rowe, 552
U.S. at 371, 375 (citation omitted) (emphasis in original).

Here, the Court finds that Defendant has failed to
demonstrate that application of the NJFPA significantly impacts

16

rates, routes, or services with respect to the transportation of
property.  Rather, Defendant vaguely asserts that application of
the NJFPA would "indirect[ly]" result in increased costs, and
would "directly influence" and "interfere with" Defendant's
obligations under federal law.  (Def.'s Br. [Docket Item 20-1],
9-10, 13.)  Defendant further asserts that the NJFPA impedes
"the uniformity and efficiency" desired by Congress and,
therefore, that the FAAA Act "should apply" to preempt these
claims.  (Id. at 13.)  Here, however, the Court finds that the
NJFPA provision implicated in this action—namely, the provision
prohibiting termination of a franchise agreement without written
notice demonstrating good cause, N.J.S.A. § 56:10-5—bears simply
too remote and tenuous an impact on rates, routes, or services
to fall within Congress' intended preemption.  In that regard,
the Court rejects Defendant's reliance on DHL Express (USA),
Inc. v. Express Save Industries, Incorporated, No. 09-60276,
2009 WL 3151319 (S.D. Fla. Sept. 26, 2009).  In DHL Express
(USA), plaintiff, "a domestic and international provider of air
and ground pick-up and delivery services[,]" decided to
discontinue its "domestic delivery services" on January 30,
2009.  Id. at *1.  The defendant, "a domestic reseller" of
plaintiff's services, asserted by counterclaim that various
state franchise laws, in addition to the parties' shipping
agreement, obligated plaintiff "to provide domestic shipping

17

services through the end of 2010." Id.  The DHL Express (USA)
plaintiff countered that the FAAA Act preempted defendant's
counterclaims, particularly in light of the fact that
plaintiff's termination of the franchise agreement resulted from
plaintiff's decision "to exit the domestic shipping market."
Id. at *2.  The Court found that the FAAA Act preempted
defendant's state-based franchise claims because the claims, in
practical effect, would impede and preclude plaintiff from
exiting "the domestic shipping market."  Id.  Indeed,
defendant's counterclaim, to extent defendant ultimately
prevailed, would have required plaintiff to continue operations
in an otherwise discontinued line of service.  Id.  The DHL
Express (USA) court therefore concluded that defendant's
counterclaims clearly bore "a 'connection with' the services
provided by" plaintiff, and that application of the state
franchise law would impart state substantive standards with
respect to rates, routes, or services.  Id.  Here, however,
Defendant nebulously asserts that application of the NJFPA would
interfere with Defendant's "motor carrier services" and "could
erect barriers" to Defendant's latitude "to choose [the agents]
to fulfill its services[,]" but fails to set forth, with
specificity, the manner in which application of the NJFPA in
this action results in a similarly significant impact. (Def.'s
Reply [Docket Item 25], 15.)  Nor has Defendant asserted that

18

the nature of Plaintiff's NJFPA claim <u>significantly</u> impacts Defendant's business decisions with respect to the <u>routes</u> or <u>services</u> it provides.  The Court therefore finds that <u>DLH Express (USA)</u> does not support a finding of preemption in this action.

Rather, the Court follows the rationale set forth in <u>Kozak v. Hillsborough Public Transportation Commission</u>, 695 F. Supp. 2d 1285 (M.D. Fla. 2010).  In <u>Kozak</u>, defendant, a legislatively-created transportation commission, enacted a "'luxury transportation service rule,'" requiring "any person wishing to operate a public vehicle conducting for-hire trips" to obtain a certificate and permit prior to loading and transporting passengers.  <u>Id.</u> at 1289-90.  The <u>Kozak</u> plaintiff, a passenger minivan operator, asserted that the FAAA Act preempted application of defendant's rule, because such rule precluded plaintiff "from acquiring the [requisite] certificate" and, derivatively, from "meet[ing] his passengers' property transport needs[.]"  <u>Id.</u> at 1302.  The <u>Kozak</u> court, however, found "no substantial evidence" from which to find that the state service rule "significantly impact[ed] rates, route[s], or services[,]" particularly because the rule made no such references.  <u>Id.</u> at 1302-03.  The court therefore found the rule's effect "simply too remote and tenuous to fall within" the ambit of the FAAA Act's preemption.  <u>Id.</u> at 1303.

Here, the Court similarly finds no substantial evidence to support any assertion that the NJFPA <u>significantly</u> impacts rates, routes, or services in a manner sufficient to trigger federal preemption.  Indeed, Defendant predicates its preemption assertion on a generic recitation of Section 14501(c)(1), and relies, in primary part, on defendant's desire to <u>choose</u> the agents with whom it contracts.  (<u>See, e.g.</u>, Def.'s Reply [Docket Item 25], 10-17.)  Section 14501(c)(1), however, "does not pre-empt state laws that affect rates, routes, or services in 'too tenuous, remote, or peripheral a manner[,]'" <u>Rowe</u>, 552 U.S. at 375 (citation omitted), and the application of the NJFPA in this instance only imposes such limited effect.  Indeed, the operative provision of the NJFPA merely erects a procedural mechanism in recognition of the historic "power disparity between franchisors and franchisees[,]" and in order "to protect 'the <u>innocent</u> franchisee'" from franchise terminations that occur "'at the franchisor's convenience.'"  <u>Goldsworthy v. Browndorf</u>, No. A-2204-10T3, 2011 WL 3687401, at *3-*4 (N.J. Super. Ct. App. Div. Aug. 24, 2011) (quoting <u>Westfield Centre Serv., Inc. v. Cities Serv. Oil Co.</u>, 432 A.2d 48, 462 (N.J. 1981)) (emphasis in original), <u>certif. denied</u>, 35 A.3d 681 (N.J. 2012).  The NJFPA, however, expressly enables a franchisor to terminate a franchise agreement where the franchisee acts in contravention of the franchise agreement <u>or</u> otherwise fails to

20

substantially comply with the agreement's requirements.  <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> N.J.S.A. § 56:10-9 (setting forth the substantial noncompliance defense under the NJFPA).  Consequently, the NJFPA, by its own terms, preserves Defendant's autonomy in a manner consistent with Section 14501(c)(1).  For all of those reasons, the Court does not find at this time that the FAAA Act preempts, as a matter of law, the application of the NJFPA in this action.

**V.   CONCLUSION**

The Court concludes that Plaintiff's Amended Complaint pleads a valid NJFPA claim and, therefore, denies Defendant's motion to dismiss with respect to such claim.  Having previously dismissed Plaintiff's good faith and fair dealing claim with prejudice, the Court will dismiss Defendant's motion as moot with respect to the good faith and fair dealing claim.  The Court will, however, direct Plaintiff to file an Amended Complaint, omitting any reference to the good faith and fair dealing claim within seven (7) days of entry of this Opinion and the accompanying Order. The accompanying Order will be entered.


**September 11, 2014**                          **s/ Jerome B. Simandle**
Date                                       JEROME B. SIMANDLE
                                           Chief U.S. District Judge